## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SHAMSIDDIN NAJMIEV, individually and on behalf
of all other persons similarly situated who were
employed by SPECIAL TOUCH HOME CARE
SERVICES, INC.,                                         Index No.

                          Plaintiffs,

          -against-

SPECIAL TOUCH HOME CARE SERVICES, INC.,

                          Defendant.

## NOTICE OF REMOVAL

TO:   THE UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK

       Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendant Special Touch Home Care

Services, Inc. ("Special Touch") hereby removes this civil action to the United States District

Court for the Southern District of New York from the Supreme Court of the State of New York,

County of New York.  This Court has original subject matter jurisdiction over this civil action

under 28 U.S.C. § 1331 because it is an action arising under the laws of the United States.  In

support of this Notice of Removal, Defendant avers as follows:

       1.      On January 24, 2017, the instant action was commenced in the Supreme Court of

the State of New York for the County of New York by Plaintiff Shamsiddin Najmiev against the

Defendant Special Touch bearing Index No. 150771/2017 and captioned as *SHAMSIDDIN

NAJMIEV, individually and on behalf of all other persons similarly situated who were employed

by SPECIAL TOUCH HOME CARE SERVICES, INC., Plaintiffs, v. SPECIAL TOUCH HOME

CARE SERVICES, INC., Defendant* (the "State Court Action").  A true and correct copy of the

Summons and Complaint filed in the state court is attached hereto as <u>Exhibit A</u>.  There have been no additional pleadings in the State Court Action.

2.    Special Touch was served with the Summons and Complaint through service on the Secretary of State of the State of New York on January 26, 2017.  *See* <u>Exhibit B</u> annexed hereto.

3.    This Notice of Removal is timely as it is being filed within thirty (30) days of receipt of the initial pleading following the January 26, 2017 service of the summons/complaint and within one year of the commencement of this action.  *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day period does not commence until service of process); 28 U.S.C. § 1446(b).

**THIS COURT HAS ORIGINAL SUBJECT MATTER
JURISDICTION UNDER SECTION 301 OF THE LABOR
MANAGEMENT RELATIONS ACT, 29 U.S.C. § 185, BECAUSE
THE CLAIMS FOR RELIEF REQUIRE INTERPRETATION OF
THE GOVERNING COLLECTIVE BARGAINING AGREEMENT**

4.    Plaintiff alleges that he is a citizen of the State of New York (Complaint ¶ 5) and was employed as a "home health care attendant" by Special Touch from approximately October 2010 through approximately January 15, 2016 (Complaint ¶ 16).  Plaintiff alleges that he provided personal home health care and assistance to Defendant's clients in their homes within the State of New York (Complaint ¶ 15).

5.    Plaintiff alleges that he worked "24-hour shifts" during his employment with Special Touch, "spent approximately 5 to 7 weeks each year during his employment working 24-hour shifts, 7 days a week," and when he "worked 24-hour shifts, he was required to stay overnight at the residences of Defendant's clients . . . " (Complaint ¶¶ 20-23).

#42864326 v1

6.      Plaintiff alleges that he "did not 'live in' the homes of Defendant's clients or in the home of his employer, nor was he an 'exempt companion' of the Defendant's clients" (Complaint ¶ 18).  Plaintiff alleges that Special Touch "required [him] to be on the premises of Defendant's clients for 24 hours during any given 24-hour shift" (Complaint ¶ 29).

7.      Plaintiff alleges he was paid an hourly rate ranging from approximately $9.00 per hour and up to $10.00 per hour, "however, he was not paid for every hour that he worked" (Complaint ¶ 24).  To that end, Plaintiff further alleges that he "was only paid for approximately 13 hours of his 24-hour shifts" and "was not paid any hourly rate for the other 11 hours worked" (Complaint ¶ 26).

8.      Plaintiff also alleges that because Defendant's clients were often elderly and suffering from various health ailments, they required constant care "and [he] did not get an opportunity to sleep without any interruption" (Complaint ¶ 28).

9.      Plaintiff claims to bring this action on behalf of himself and a similarly situated putative class of employees who worked for the Defendant  (Complaint ¶ 9).  Plaintiff defines the "Putative Class" as "consisting of each and every person who is a citizen of the State of New York and who was employed by Defendant to provide personal care, assistance, health-related tasks and other home care services to Defendant's clients within the State of New York during the period from January 2011 up to December 31, 2015, but ceased working for Defendant on or before December 31, 2015" (Complaint ¶ 9).

10.     Plaintiff alleges that his claims "are typical to the claims of the class, because they are all former home health care employees of Defendant who sustained damages, including underpayment of wages as a result of Defendant's common compensation policies and practices" (Complaint ¶ 12).

11.     With regard to his class-wide allegations, Plaintiff further alleges that "[his] co-workers performed the same and/or similar work to that of Named Plaintiff" (Complaint ¶ 32), and that "[s]imilarly to Named Plaintiff, the Putative Class members did not 'live in' the homes of Defendant's clients, nor were they 'exempt companions'" (Complaint ¶ 33).

12.     Plaintiff also alleges that, similar to the Named Plaintiff, "Defendant required the Putative Class members to be on the premises of Defendant's clients for 24 hours during any given 24-hour shift" (Complaint ¶ 35); and "[l]ike Named Plaintiff, the putative class members were only paid for approximately 13 hours of their 24-hour shifts" (Complaint ¶ 36). He also alleges that at all relevant times, "Defendant maintained a practice and policy of paying Plaintiffs for approximately 13 hours of their 24-hour shifts in violation of New York State Labor Law" (Complaint ¶ 37).

13.     Plaintiff also alleges that Special Touch failed to pay him and the Putative Class "prevailing rates of wages and benefits as required by NY Public Health Law § 3614-c" (Complaint ¶¶ 41-45).  Plaintiff further alleges that he and the Putative Class were also required to be paid by Special Touch "'[t]he 'living wage' and 'health benefits' or 'health benefits supplement' . . . set forth in the Homecare Services Section of 6-109 of the NYC Admin. Code" (Complaint ¶¶ 48-53).

14.     Plaintiff brings six causes of action against Special Touch on his own behalf and on behalf of the Putative Class.  The first four are brought under the New York Labor Law and the last two are brought as breach of contract actions.

15.     The First Cause of Action is for a violation of the New York Labor Law's minimum wage provisions.  Plaintiff claims that by virtue of the foregoing allegations as more

detailed in the Complaint, Special Touch "failed to pay Plaintiffs the statutory minimum wage in violation of NYLL § 652 and 12 NYCRR § 142-2.1" (Complaint ¶¶ 55-62).

16.     The Second Cause of Action is for a violation of the New York Labor Law's overtime wage provisions.  Plaintiff claims that by virtue of the foregoing allegations as more detailed in the Complaint, Special Touch "failed to pay Plaintiffs the applicable overtime hourly rate for all hours worked in excess of 40 per work week,  in violation of NYLL § 650 et seq. and 12 NYCRR § 142-2.2" (Complaint ¶¶ 63-69).

17.     The Third Cause of Action is for a violation of the New York Labor Law's "spread of hours" provisions.  Plaintiff claims that by virtue of the foregoing allegations as more detailed in the Complaint, Special Touch "failed to pay Plaintiffs the 'spread of hours' premium required by 12 NYCRR § 142-2.4" (Complaint ¶¶ 70-75).

18.     The Fourth Cause of Action is for a violation of the New York Labor Law's wage payment provisions.  Plaintiff claims that by virtue of the foregoing allegations as more detailed in the Complaint, Special Touch failed to pay Plaintiffs all of their weekly wages within seven days after the end of the week in which they were earned, in violation of New York Labor Law § 191, and for alleged improper deductions in violation of New York Labor Law § 193 (Complaint ¶¶ 76-84).

19.     The Fifth and Sixth Causes of Action (Complaint ¶¶ 85-98) are for breaches of contract of which Plaintiff alleges he and the Putative Class are third-party beneficiaries (Complaint ¶ 91).  The Fifth Cause of Action claims that Special Touch entered into contracts with government agencies that obligated it "to pay Plaintiffs wages as required by NY Public Health Law § 3614-c" (Complaint ¶ 86), and the Sixth Cause of Action claims that Special Touch breached "City Service Contract(s) entered into by Defendant contain[ing] provisions

#42864326 v1

requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs [under New York City Administrative Code § 6-109]" (Complaint ¶ 93).

20.    The alleged "common compensation policies and practices" (Complaint ¶ 12) that Plaintiff claims violate the New York Labor Law and breach certain contracts with governmental agencies were undertaken by Special Touch in accordance with and pursuant to the specific provisions of the governing collective bargaining agreement (the "CBA"), an entire copy of which is attached hereto as Exhibit C. *See* Declaration of Evan Ostrovsky dated February 23, 2017 ("Ostrovsky Declaration," attached hereto as Exhibit D) at ¶ 12. The CBA was negotiated between Special Touch and the union representing Plaintiff and other home health aides employed by Special Touch (the "Union"). *See* Ostrovsky Declaration at ¶¶ 3-4. Special Touch has followed those provisions in its treatment of Plaintiff and other aides with regard to wages and wage payments. *Id.* at ¶ 3. The CBA is comprised of several documents first negotiated in 2005 and amended and modified on numerous occasions since then. *Id.* at ¶¶ 4-11. As a member of the bargaining unit represented by the Union, Plaintiff has been subject to and covered by each and every one of the documents that comprise the CBA, as more fully set forth in the Ostrovsky Declaration (at ¶ 12).

21.    Plaintiff was last issued a payroll check (via direct deposit) from Special Touch, pursuant to the terms of the CBA, on February 11, 2016 and remained on Special Touch's payroll roster of active employees and the New York State Home Care Registry as an employee of Special Touch throughout the entire 2016 calendar year. *See* Ostrovsky Declaration at ¶ 12.

22.    Plaintiff has failed to utilize or exhaust the grievance and the mediation/arbitration procedures and remedies in the CBA; such procedures and remedies

govern disputes arising over the terms and conditions of Plaintiff's employment with Special Touch. including the payment of wages under the CBA. *See* Ostrovsky Declaration at ¶ 13.

23.     Each of the six causes of action in the Complaint is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), which governs lawsuits pertaining to alleged violations of collective bargaining agreements.

24.     Plaintiff's claims are not only preempted by Section 301, but they also provide this Court with original federal court jurisdiction under Section 301, for the following reasons, among others:

(a)     The claims are substantially dependent upon analysis and interpretation of the terms of the CBA, and then application of the terms of the CBA to Plaintiff and members of the Putative Class, including but not limited to the wage, negotiation, grievance, and mediation/arbitration provisions of the CBA (including each of the documents comprising the CBA). The CBA is the product of negotiations between Defendant and the Union, undertaken pursuant to the respective obligations of Special Touch, an employer, and the Union, a labor organization, under Sections 8(a)(5), 8(b)(3), and 8(d) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(5), 158(b)(3), and 158(d)), and requires this Court to interpret and analyze, and then apply, the wage, negotiation, grievance, and/or mediation/arbitration provisions in the CBA.

(b)     The actions by Special Touch that Plaintiff alleges were in violation of the New York Labor Law were undertaken by Special Touch in accordance with and pursuant to the wage provisions set forth in the attached CBA. *See* Ostrovsky Declaration at ¶ 4. Such wage provisions in the CBA were the subject of negotiation between Special Touch and the Union representing Plaintiff and other home health aides employed by

Special Touch, and conferred special benefits upon Plaintiff and the other home health aides in view of the exigencies of the home health industry, where such home health aides work without any observation by their employer in the homes of clients, and where neither Special Touch nor many of its seriously ill or infirm clients are in a position to confirm the home health aides' hours of work, time available for sleep, time actually slept, periods of interruptions in their sleep, duration of their meal breaks, and other periods of time where the home health aides are not engaged in compensable work. *See Id.* at ¶¶ 6-9. Such wage provisions in the CBA were arrived at as a result of good faith negotiations between Special Touch and the Union, without any duress or coercion. *See Id.* at ¶ 7. The wage provisions negotiated on the basis of such exigencies in the home health industry were to the advantage of both Plaintiff and the other home health aides represented by the Union as well as Special Touch in a mutual effort between Special Touch and the Union to negotiate an alternative arrangement better suited to their respective needs and the needs of the Union's members. *Id.* at ¶ 7.

(c)    The wage claims by Plaintiff in this case are required under the terms of the attached CBA to be the subject of the grievance procedures set forth in the CBA. If not resolved in the grievance procedures, such wage claims are required by the CBA to be the subject of mediation in the manner set forth in the CBA. And if not resolved in mediation, such wage claims are required by the CBA to be the subject of arbitration between the Union and Special Touch *or*, if the Union does not take the case to arbitration, are required to be arbitrated by the Plaintiff pursuant to the terms of the CBA. To the extent the Plaintiff has taken action in derogation of such provisions in the CBA by initiating this lawsuit, this federal court would be required to interpret the CBA to

-8-

determine whether the dispute is subject to the grievance/mediation procedures under the CBA, whether the Plaintiff failed to exhaust the grievance/mediation procedures under the CBA, and whether the dispute is governed by the arbitration provisions of the CBA.

(d)　　The governing CBA also provides that where the wage and hour provisions of the CBA do not comply with the law, the Union and Special Touch are obligated to mutually cooperate to ensure compliance with the law.  The governing CBA further provides that where a 24-hour shift health aide claims that he/she is unable to receive five (5) hours of uninterrupted sleep-time or otherwise does not receive the pay to which he/she claims entitlement, the aide is required to notify Special Touch "so that pay can be adjusted accordingly."  This federal court will be required to determine if there is a case or controversy presented by Plaintiff at the present time in view of its interpretation and analysis of the relevant provisions of the CBA and whether Plaintiff has undertaken and exhausted his contractual obligations.

(e)　　This federal court will also be required to interpret and analyze the CBA to determine whether the wages and/or supplemental benefits alleged to have been unpaid pursuant to governmental contracts had been superseded or waived by terms the CBA.

25.　　The factual basis for preemption of the state law claims and original federal court jurisdiction is set forth in the Complaint (Exhibit A), the CBA (Exhibit C), and the Ostrovsky Declaration (Exhibit D), each of which is incorporated herein in its entirety.

26　　For all of the foregoing reasons, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and removal is appropriate under 28 U.S.C. §§ 1441 and 1446.

## CONFORMANCE WITH OTHER PROCEDURAL REQUIREMENTS

27.　　No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

#42864326 v1

28.     The United States District Court for the Southern District of New York is the federal judicial district encompassing the Supreme Court of the State of New York for the County of New York, where this suit was originally filed.  Venue, therefore, is proper in this district under 28 U.S.C. § 1441(a).

29.     Pursuant to the provisions of 28 U.S.C. § 1446(d), Defendant will promptly file a copy of this Notice of Removal with the clerk of the Supreme Court of the State of New York for the County of New York, and will serve a copy upon Plaintiff's counsel.

WHEREFORE, Defendant hereby respectfully removes the above-captioned action *from* the Supreme Court of the State of New York for the County of New York *to* the United States District Court for the Southern District of New York.

Dated:  February 23, 2017                      Respectfully submitted:


Richard J. Reibstein
PEPPER HAMILTON LLP
620 Eighth Avenue, 37th Floor
New York, New York  10018
Tel. 212-808-2722
reibsteinr@pepperlaw.com

*Attorneys for Defendant*

#42864326 v1

## CERTIFICATE OF SERVICE

I am an attorney duly admitted to the Bar of the State of New York. I hereby certify that on February 23, 2017, a true and correct copy of the foregoing document was served via First Class, U.S. Mail, postage prepaid, and by e-mail, on Plaintiff's counsel of record as follows:

Lloyd R. Ambinder, Esq.
LaDonna M. Lusher, Esq.
Milana Dostanitch, Esq.
VIRGINIA & AMBINDER, LLP
40 Broad Street, Seventh Floor
New York, New York 10004
Tel. (212) 943-9080

Richard J. Reibstein