## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAMSIDDIN NAJMIEV,<br><br>                              Plaintiff,<br><br>              -against-<br><br>SPECIAL TOUCH HOME CARE SERVICES, INC.,<br><br>                              Defendant. | No. 17-cv-1386 (VEC) (JCF)<br><br>**Oral Argument Requested** |

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

PEPPER HAMILTON LLP
Richard J. Reibstein, Esq.
Janet B. Barsky, Esq.
The New York Times Building, 37th Floor
620 Eighth Avenue
New York, New York 10018
Tel. 212.808.2700
Attorneys for Defendant                                        April 7, 2017

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ............................................................... 1

**SUMMARY OF OPPOSITION** ............................................................... 1

**ARGUMENT** ...................................................................................... 4

Point I     **PLAINTIFF ERRONEOUSLY TELLS THIS COURT THAT SECTION 301 DOES NOT PREEMPT STATUTORY WAGE CLAIMS, YET THE LEADING CASE IN THE SECOND CIRCUIT, *VERA V. SAKS*, HELD THAT A CLAIM UNDER THE NEW YORK LABOR LAW *WAS* INDEED PREEMPTED** ........................................................ 4

Point II    **THE NEW YORK LABOR LAW SECTIONS INVOKED BY PLAINTIFF ARE ALL SUBJECT TO WAIVER OR MODIFICATION BY COLLECTIVE BARGAINING AGREEMENT** ................................... 7

    A.    **New York Labor Law Provisions May Be Modified or Waived by a Collective Bargaining Agreement Where Certain Conditions Are Met** .......... 7

    B.    **The Provisions of the New York Labor Law Pertaining to Unpaid Hours of Work,  Overtime, "Spread of Hours," and Wage Deductions May Be Modified or Waived by Agreement** ........................................ 9

    C.    **The Collective Bargaining Agreement Between Special Touch and 1199SEIU Was the Result of Good Faith Negotiations** ................................... 15

    D.    **There Was No Duress or Coercion in the Negotiations Which Resulted in the Special Wage Agreements** ....................................... 16

    E.    **The Legislative Purpose Was Not Compromised By the  Special Wage Agreements Between Special Touch and 1199SEIU** ........................................ 17

Point III  **AS IN *VERA*, RESOLUTION OF THE CLAIMS IN THIS CASE REQUIRES THIS COURT TO ANALYZE AND INTERPRET THE MODIFICATION/WAIVER PROVISIONS IN THE COLLECTIVE BARGAINING AGREEMENT** ........................................................ 18

Point IV  **PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION DIRECTLY PLEAD VIOLATIONS OF A COLLECTIVE BARGAINING AGREEMENT** ........................................................................ 20

**CONCLUSION** ................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ...................................................................5

*American Broadcasting Companies, Inc. v. Roberts*, 61 N.Y.2d 244 (1984)....................... *passim*

*Chu v. Chinese-American Planning Council Home Attendant Program,
Incorporated*, 194 F. Supp. 3d 221 (S.D.N.Y. 2016) ....................................................3, 19, 20

*DiFilippo v. Barclays Capital, Inc.,* 552 F. Supp. 2d 417 (S.D.N.Y. 2008)..........12, 13, 14, 17, 18

*Hummel v. AstraZeneca LP,* 575 F. Supp. 2d 568 (S.D.N.Y. 2008) ...................12, 13, 14, 17, 18

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988) .....................................................5

*Simel v. JP Morgan Chase*, 2007 U.S. Dist. LEXIS 18693, 2007 WL 809689, No.
05-CV-9750 (GBD) (S.D.N.Y. March 19, 2007) ........................................................... *passim*

*Vera v. Saks & Company*, 335 F.3d 109 (2d Cir. 2003) ........................................................ *passim*

*Wright v. Brae Burn Country Club, Inc.,* 2009 U.S. Dist. LEXIS 26492, 2009 WL
725012, No. 08 Civ. 3172 (DC) (S.D.N.Y. March 20, 2009)...................11, 12, 13, 14, 17, 18

## PRELIMINARY STATEMENT

This Brief is submitted by Defendant Special Touch Home Care Services, Inc. ("Special Touch") in opposition to Plaintiff's Motion to Remand this civil action to state court for lack of federal court jurisdiction.  Special Touch respectfully submits that this Court has subject matter jurisdiction over the instant action under 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, because the claims for relief require analysis and interpretation of a collective bargaining agreement covering Plaintiff's employment with Special Touch.

## SUMMARY OF OPPOSITION

Plaintiff's entire motion is flawed and misguided.  The single governing case in the Second Circuit on Section 301 preemption is *Vera v. Saks & Company*, 335 F.3d 109 (2d Cir. 2003), yet Plaintiff virtually disregards that case and its holding that certain types of claims for relief under New York Labor Law are indeed preempted by Section 301.  In a perfunctory manner, Plaintiff quotes the holding of *Vera* in a citation to a district court case.: "[I]f state law establishes enforceable rights that 'are independent of a labor contract, actions to enforce such independent rights or rules would not be preempted by section 301' *unless the resolution of the state law claim will be substantially dependent on an analysis of a collective bargaining agreement*." *Id.* at 115 (emphasis added).  *See* Pl. Brief at 2.  Plaintiff, however, then wholly ignores that holding and the Second Circuit's reasoning as to why Vera's claim under the New York Labor Law was preempted by Section 301.  To compound matters, Plaintiff tells this Court in a heading on page 1 of his Brief that "Section 301 Does Not Preempt Statutory Wage Claims," when in fact *Vera* itself held that a statutory wage claim under the New York Labor Law *was* preempted by Section 301 – and therefore conferred federal question jurisdiction on the district court.

The wage claim in *Vera* – just like Plaintiff's lawsuit herein – was brought under Section 193 of the New York Labor Law by a worker covered by a collective bargaining agreement.  As we discuss in depth in Point I of our Argument section below, the Second Circuit held in *Vera* that removal of the New York labor Law claim *was appropriate* under Section 301 because the court was required to analyze and interpret the governing collective bargaining agreement "to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned."  *Id.* at 115.

The governing decision in New York addressing the issue of whether a New York Labor Law provision may be lawfully modified or waived by a collective bargaining agreement is *American Broadcasting Companies, Inc. v. Roberts*, 61 N.Y.2d 244 (1984) ("*ABC*").  The *ABC* case addressed a collectively bargained agreement that sought to modify/waive a section of the New York Labor Law.  The New York Court of Appeals held in *ABC* that a collective bargaining agreement can validly waive a section of the Labor Law where the following four circumstances are present: (1) "the statute contains no express prohibition against waiver"; (2) "the waiver [or modification] was arrived at as a result of good faith negotiations"; (3) "there is not even a hint of duress or coercion in the negotiations which resulted in th[e] agreement"; and (4) "the legislative purpose . . . is in no way compromised by the agreement between the [employer] and its employees."  *Id.* at 250.

Each of the four circumstances identified in the *ABC* case are equally applicable herein.  As shown in Part II below, several decisions by judges in this district court have concluded that the holding in *ABC* applies to New York Labor Law claims for unpaid hours of work, overtime, improper deductions, and the "spread of hours" premium – the very same types of claims asserted in the first four causes of action in Plaintiff's complaint *because there is no express*

*prohibition against waiver or modification of those sections of the New York Labor Law and no public policy is violated by any such waiver or modification*.  Further, each of the remaining circumstances identified in the *ABC* case were specifically set forth in Special Touch's Notice of Removal and were included in the accompanying Declaration of Special Touch's CEO.  Yet, instead of addressing the key factual circumstances set forth in the Notice of Removal, Plaintiff's Motion to Remand ignores them. When considered, however, those key factual circumstances fully support the conclusion that, like *Vera*, the resolution of each of Plaintiff's New York Labor Law claims requires this Court to analyze and interpret the governing collective bargaining agreement.

Plaintiff's Fifth and Sixth Causes of Action allege that Special Touch failed "to pay Plaintiffs wages as required by NY Public Health Law § 3614-c" and failed to make "payment of living wages and health benefits or health benefit supplements to Plaintiffs [under New York City Administrative Code § 6-109]."  *See* Complaint ¶¶ 86, 93 [Dkt 1-1].  Plaintiff has evidently overlooked the fact that his Fifth and Sixth causes of action for breach of contract are expressly based on the aforesaid statutory provisions and that both laws make specific reference to payments *under collective bargaining agreements*.  Thus, not only are Plaintiff's unpaid hours, overtime, wage deduction, and "spread of hours" claims preempted by Section 301, but (as discussed in Point IV below) his final two claims for relief are also preempted because they, too, require the Court to analyze and interpret the collective bargaining agreement referenced in the statutes themselves.

Finally, Plaintiff's Brief gives outsized mention to Judge Forest's 2016 decision in *Chu v. Chinese-American Planning Council Home Attendant Program, Incorporated*, 194 F. Supp. 3d 221 (S.D.N.Y. 2016).  However, the factual and legal predicates for Section 301 jurisdiction

noted above were not available to the defendant in that case, with the exception of the argument

dealing with New York Public Health Law § 3614-c and New York City Administrative Code §

6-109, which the defendant did not raise.

## ARGUMENT

### Point I

### PLAINTIFF ERRONEOUSLY TELLS THIS COURT THAT SECTION 301 DOES NOT PREEMPT STATUTORY WAGE CLAIMS, YET THE LEADING CASE IN THE SECOND CIRCUIT, *VERA V. SAKS*, HELD THAT A CLAIM UNDER THE NEW YORK LABOR LAW *WAS* INDEED PREEMPTED

Plaintiff's Motion to Remand cites to an array of district court cases involving the issue

of Section 301 preemption of New York Labor Law claims, yet virtually ignores the *only*

controlling case on the issue in this Circuit, *Vera v. Saks & Company*, 335 F.3d 109 (2003),

which held that a claim under the New York Labor Law *was* preempted by Section 301 of the

LMRA.  Indeed, a heading on the first page of Plaintiff's Brief is erroneously entitled "Section

301 Does Not Preempt Wage Claims."  That is simply wishful thinking on the part of Plaintiff,

who does not even list *Vera* in his Table of Authorities.  Indeed, Plaintiff's only mention of *Vera*

is in a citation to a case decided by a district court judge, who quotes from *Vera*.  *See* Pl. Brief at

2.

In *Vera*, the plaintiff, a shoes salesman at Saks Fifth Avenue, earned commissions based

on shoe sales. 335 F.3d at 112. The plaintiff was a member of the union and subject to the terms

of a collective bargaining agreement. *Id.* The labor contract detailed how employee commissions

would be calculated and included a provision that when customers returned shoes without a

receipt (which meant Saks was unable to identify the salesperson who sold the shoes), all

unidentified returns would be charged back against commissions by dividing the total of the

returns among the employees based on each employee's percentage of net sales for that month.

*Id.* The plaintiff brought suit, alleging that the unidentified returns policy, and Saks' implementation of that policy, violated New York Labor Law Section 193, which forbids employers from making certain deductions from employees' wages. *Id.* at 112-113.

Saks removed the action to federal court on the basis that the New York Labor Law claim was preempted under Section 301. *Id.* at 113. Plaintiff's motion to remand was denied by Judge John Koeltl, who held that that the Section 193 claim "necessarily involved interpretation of the CBA and therefore was preempted by Section 301." *Id.* After Judge Koeltl granted defendant's motion for summary judgment, the plaintiff appealed the remand and summary judgment rulings. *Id.*

In its decision in *Vera*, the Second Circuit first examined U.S. Supreme Court jurisprudence on Section 301 preemption. It began by noting that "[t]he Supreme Court has interpreted section '301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Id.* at 114 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). The *Vera* Court continued:

> Questions relating to what the parties to a labor contract agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law . . . . "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law. . . ."

*Id.* at 114 (citing and quoting from *Allis-Chalmers Corp.,* 471 U.S. at 220).

The Second Circuit noted in *Vera* that not every case concerning employment or "tangentially" involving a collective bargaining agreement is preempted by Section 301. *Id.* at 114. For example, a state law claim would not be preempted "if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is

entitled.'" *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988)). The Second Circuit also observed that "the boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive . . . ." *Id.* at 115 (citation omitted). With those fundamentals in mind, the Court then addressed the issue of whether the Labor Law Section 193 claim asserted by Vera would require substantial analysis of the collective bargaining agreement between Saks and the union representing the plaintiff.

The plaintiff argued in Vera that Labor Law Section 193 creates state rights that are wholly independent of the collective bargaining agreement – just as Plaintiff argues herein. Vera asserted that while the court may need to "refer" to the labor contract, it would not need to interpret it. *Id.* at 115. The Second Circuit noted that, in support of his argument, Vera recited the common law default rule that commissions are earned at the time of the sale, so any action taken after the time of sale that reduces one's commission is an unlawful deduction from wages within the meaning of Section 193.  *Id.*

In its decision, the Second Circuit noted that the plaintiff in *Vera* acknowledged that Section 193 does not prohibit parties from contracting to alter this default rule.  *Id.*  The plaintiff contended, however, that there was no need for the Court to interpret the collective bargaining agreement to see whether Saks and the union had agreed to alter the common law rule of commissions. *Id.*

The Court rejected this argument. It concluded that a determination of this particular Section 193 claim "requires interpretation of the CBA." *Id.* The Court stated: "For example, we must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned."  *Id.*

Plaintiff herein has raised a Section 193 claim for failure to pay wages.  *See* Complaint at ¶¶ 79, 81 (Fourth Cause of Action – Failure to Pay Wages).  We will show in Point III below that the resolution of Plaintiff's Section 193 claim, like Vera's, requires interpretation of the CBA to determine whether Special Touch and the union representing Plaintiff modified Section 193 with regard to payment of wages/wage deductions. In addition, we will show in Point III below that (a) the other sections of the New York Labor Law on which Plaintiff bases his unpaid hours of work and overtime claims may also be lawfully modified or waived by a collective bargaining agreement, and (b) resolution of those other wage claims will also require this Court to interpret the labor contract to determine whether it modified or waived these other sections of the Labor Law as well.

### Point II

### THE NEW YORK LABOR LAW SECTIONS INVOKED BY PLAINTIFF ARE ALL SUBJECT TO WAIVER OR MODIFICATION BY COLLECTIVE BARGAINING AGREEMENT

**A.    New York Labor Law Provisions May Be Modified or Waived by a Collective Bargaining Agreement Where Certain Conditions Are Met**

In 1984, the Court of Appeals of New York issued an opinion in *American Broadcasting Companies, Inc. v. Roberts,* 61 N.Y.2d 244, 461 N.E.2d 856, 461 N.Y.S.22d 370 (1984). The case involved the issuance of a notice of labor law violation by Lillian Roberts, the Industrial Commissioner of the New York State Department of Labor, asserting that American Broadcasting Companies ("ABC") was in violation of Section 162 of the Labor Law for failing to provide a 20-minute dinner meal break between 5 p.m. and 7 p.m. to employees who commenced work before noon and continued working past 7 p.m.  *See* 61 N.Y.2d at 246.

In its decision, the court noted that "[t]he nature of this programming makes it impractical and unrealistic to afford employees who are members of the technical crews specific

rest periods during certain time periods." *Id.*at 247.  The court then addressed the reason why ABC and its union sought to modify the provisions of the dinner meal break law:

> Recognizing the need for flexibility in the provision of rest periods and the difficulty of anticipating the necessity for overtime work, petitioner and its employees, through their exclusive bargaining agent, sought to accommodate the unique requirements of this telecommunications industry by specific negotiation on this aspect of working conditions.

*Id.* at 247-48.  The court then described the resulting agreement between ABC and the union representing the workers, whereby the parties to the labor contract agreed to a modification of the statutorily-prescribed time and duration of the dinner meal period by enlarging the duration of the dinner meal period, changing the times when it would be taken, affording ABC the right to schedule or deny workers meal periods at its discretion, and requiring ABC to pay workers monetary compensation for meal breaks they were not permitted to take due to broadcasting requirements.  *Id.* at 248.

The *ABC* court noted that while the collectively bargained agreement regarding the dinner meal break "is clearly not in strict compliance with the statutory requirement," *id.*, ABC contends on appeal that "the specific statutory benefit has been waived by its employees by virtue of the collective bargaining agreement."  *Id.*

The New York Court of Appeals analyzed the purpose of the statutory provision, noting the public interest in giving workers the opportunity to eat and rest during the course of a 7-hour or more shift, but concluded that "the fact that a public interest is present does not erect an inviolable shield to waiver of the statutory provisions." *Id.* at 249. The court added: "Where there is no express indication of the legislative intent, *waiver or modification of such a statutory benefit will be permissible* to the extent that it can be ascertained that the legislative purpose is not contravened." *Id.* (citations omitted) (emphasis added).

The court evaluated four cases where it permitted waiver of a statutory benefit in the employment context, noting that "waivers which are otherwise permissible may be effected by the employees' exclusive bargaining agent through the collective bargaining process." *Id.* at 250 (citations omitted).  The court then concluded that "it is clear that the employees executed a valid waiver of the statute's specific [dinner] meal break requirement."  *Id.* In reaching its holding, the court noted that four circumstances supported its holding:

- First, the New York Labor Law provision in question "contains no express prohibition against waiver." *Id.*

- Second, "the [modification/waiver of the dinner meal break period] was arrived at as a result of good faith negotiations with respect to a term of employment."  *Id.*

- Third, "there is not even a hint of duress or coercion in the negotiations which resulted in this agreement."  *Id.*

- Fourth, "the legislative purpose . . . is in no way compromised by the agreement between the [employer] and its employees."  *Id.*

As shown below, each of these four circumstances are likewise present with regard to the sections of the Labor Law on which Plaintiff's claims for relief are based.

**B.    The Provisions of the New York Labor Law Pertaining to Unpaid Hours of Work,  Overtime, "Spread of Hours," and Wage Deductions May Be Modified or Waived by Agreement**

The *ABC* case involved Section 162 of the New York Labor Law covering meal breaks for employees.  Although the claims for relief in this civil action do not include a Section 162 claim, *ABC* has been cited with approval and relied upon by a number of federal judges in this district in decisions upholding agreements that waived or modified *the very same sections of the*

*New York Labor Law (and the very same regulations issued thereunder) on which* Plaintiff's claims for relief are based.

Plaintiff's First Cause of Action is a minimum wage claim for allegedly unpaid hours of work brought under "NYLL § 652 and 12 NYCRR § 142-2.1" (Complaint ¶ 60) and under "NYLL § 190 et seq. and § 650 et seq." (Complaint ¶ 62).  The Second Cause of Action is an overtime claim for allegedly unpaid hours of work under "NYLL § 650 et seq. and 12 NYCRR § 142-2.2" (Complaint ¶ 67).  The Third Cause of Action is a "spread of hours" claim under "12 NYCRR § 142-2.4" (Complaint ¶ 75).  The Fourth Cause of Action is a failure to pay wages and improper deduction/withholding of wages claim under "NYLL § 193" (Complaint ¶ 81).  As shown below, *all* of those sections of the New York Labor Law have been held by judges in this district to be subject to waiver or modification under the authority of *ABC*.

The first case that relied on the New York Court of Appeals decision in *ABC* is *Simel v. JP Morgan Chase*, 2007 U.S. Dist. LEXIS 18693, 2007 WL 809689, No. 05-CV-9750 (GBD) (S.D.N.Y. March 19, 2007).  That case involved the same statutory provision and the same regulation on which Plaintiff bases at least two of his claims in his Complaint: New York Labor Law § 193 and 12 NYCRR § 142-2.2.  Specifically, the plaintiff in *Simel* asserted a federal claim for unpaid compensation under the Fair Labor Standards Act (FLSA) as well as state claims for failure to pay overtime in violation of 12 NYCRR § 142-2.2, improper deductions under New York Labor Law Section 193, and failure to pay overtime compensation under an unspecified provision of the New York Labor Law (presumably 12 NYCRR § 142-2.2).[1]  2007 U.S. Dist. LEXIS 18693, at *1-2.

---

[1] Unlike the FLSA, where Congress has mandated that employers pay their employees both the minimum wage rate and overtime to non-exempt employees,  the Legislature in New York has only passed a minimum wage law, as set forth in Article 19 ("Minimum Wage Act") of the New York Labor Law (codified at N.Y. Lab. Law §§ 650-665).   New York's overtime pay provisions are set forth as part of the "Minimum Wage Order for

The defendant in *Simel* made a motion to dismiss all of the New York Labor Law claims based on a settlement agreement and release that the plaintiff had entered into, resolving all of his employment disputes. In opposition to the motion, the plaintiff argued that "since FLSA provides wage and hour claims similar to those under New York state law, his state claims should also enjoy the FLSA's expressed prohibition of waiver and unsupervised settlements." *Id.* at *12.  Citing *ABC*, Judge George Daniels disagreed, holding that "[t]he New York State law provisions on which [plaintiff's] claims rely do not contain express provisions restricting the private settlement of claims or waiver of statutory rights." *Id.* at *14.  He added that the plaintiff received benefits from the settlement agreement and the "policy goals behind the New York overtime wage law and Section 193 of the New York Labor Law were not frustrated by [t]his settlement . . . ." *Id.* at *15-16.  After adding that there was no allegation of any fraud, duress, or undue influence, Judge Daniels granted the motion to dismiss in *Simel*. *Id.* at *17-18.

The second case that relied on *ABC* was *Wright v. Brae Burn Country Club, Inc.,* 2009 U.S. Dist. LEXIS 26492, 2009 WL 725012, No. 08 Civ. 3172 (DC) (S.D.N.Y. March 20, 2009). Like the plaintiff in *Simel*, the plaintiff in *Wright* settled his employment claims in exchange for monetary considerations by means of a written agreement containing a general waiver and release.  Thereafter, the plaintiff filed a lawsuit in federal court alleging a failure to pay wages for hours worked and for overtime compensation in violation of the FLSA and "the New York Labor Law (the 'NYLL'), § 190 et seq."  2009 U.S. Dist. LEXIS 26492, at *1.  Notably, § 190 *et seq.* are also the sections of the New York Labor Law upon which Plaintiff bases his wage claims herein.  *See*  Complaint ¶ 62.

---

Miscellaneous Industries and Occupations," which was promulgated by the Commissioner of Labor.  The overtime provisions are found in Part 142 of Title 12 of the New York Codes, Rules, and Regulations of the State of New York. See 12 NYCRR § 142-2.2 ("Overtime Rate").

The defendant in *Wright* filed a motion to dismiss or in the alternative for summary judgment on the New York Labor Law claims, relying on the waiver and release in the settlement agreement signed by the plaintiff.  Judge Denny Chin granted the motion, stating:

> The New York State Court of Appeals has held that "where there is no express indication of legislative intent, waiver or modification of such a statutory benefit will be permissible to the extent it can be ascertained that the legislative purpose is not contravened." *Am. Broadcasting Cos., Inc. v. Roberts*, 61 N.Y.2d 244, 249, 461 N.E.2d 856, 473 N.Y.S.2d 370 (1984). There is no express restriction on the private settlement or waiver of wage and hour claims under New York law. *Cf.* N.Y.Lab. Law § 595 (McKinney 2002) (restricting waiver of rights to unemployment insurance); N.Y. Workers' Comp. Law § 32 (restricting waiver of rights to workers' compensation); *see also Simel,* 2007 U.S. Dist. LEXIS 18693, 2007 WL 809689, at *4-5 (discussing New York law on waiver of claims and holding NYLL wage claims waived).

2009 U.S. Dist. LEXIS 26492, at *11.  Judge Chin added that "Wright's waiver of his NYLL wage claims, moreover, does not raise any public policy concerns or run counter to legislative purpose." *Id.*

The next case in this district that held that sections of the New York Labor Law can be modified or waived is *DiFilippo v. Barclays Capital, Inc.,* 552 F. Supp. 2d 417 (S.D.N.Y. 2008). That case involved an action for unpaid minimum wage and overtime compensation under the FLSA as well as state law under "N.Y. Lab. Law § 650 *et seq*." (*id.* at 419) – which are also sections of the New York Labor Law on which Plaintiff herein bases his minimum wage and overtime claims.  *See* Complaint ¶¶ 62, 67.  Barclays made a motion for summary judgment on DiFilippo's New York Labor Law claims based on the general release and waiver that DiFilippo signed, where he "waiv[ed] his right to seek relief under the New York Labor Law in exchange for a severance payment . . . ."  *Id.* at 426.  Judge Victor Marrero observed that in *Simel,* "The Employee . . . asserted that his rights under the New York Labor Law were 'established independently in public policy and therefore [could not] be "waived or released," even through settlement.'" 552 F. Supp. 2d at 426 (citing *Simel,* 2007 U.S. Dist. LEXIS 18693, 2007 WL

809689, at *4.)  Judge Marrero observed that the *Simel* court had rejected that argument, and he did likewise in *DiFilippo*, ordering that "Barclays [motion] for summary judgment is GRANTED with respect to the claim brought pursuant to the N.Y. Lab. Law § 650 *et seq.* by DiFilippo." *Id.* at 428.

*Hummel v. AstraZeneca LP,* 575 F. Supp. 2d 568 (S.D.N.Y. 2008), involves a claim for overtime compensation and "spread of hours" compensation claiming a "violation of N.Y. Lab. Law §§ 650 *et seq.*, 190 *et seq.*, and 12 N.Y.C.R.R. Part 142 . . . ."[2]  *Id.* at 568-69.  Citing *Simel* and *DiFilippo,* Judge Marrero granted summary judgment to the defendant on both the claims for overtime and "spread of hours" based on a waiver and release agreement that Hummel signed in exchange for a monetary benefit.  *Id.* at 571.  In so doing, Judge Marrero cited to Judge Daniels' statement in *Simel* that "Agreements that purportedly release employers from liability for claims arising under the New York Labor Law overtime requirements are generally valid and enforceable." *Id.* at 570.

There are a few provisions of the New York Labor Law that simply cannot be modified or waived by agreement, and the New York Court of Appeals in the *ABC* case listed two of them: agreements to pay an employee less than the minimum wage rate, and agreements with an employee to forego the filing a claim for unemployment benefits. *See* 61 N.Y.2d at 250.

Judge Chin in the *Wright* decision identified another provision of the New York Labor Law that cannot be waived or modified by agreement – workers' compensation benefits. As stated by Judge Chin: "There is no express restriction on the private settlement or waiver of wage

___

[2] The "spread of hours" provision in New York, like the overtime provision (*see* note 1, *supra*), does not appear in the New York Minimum Wage Act.  It is not a legislative act but rather an administrative rule. The provisions requiring payment for a  "spread of hours" premium where an employee works over ten hours in a day is, like the overtime provision, found in the "Minimum Wage Order for Miscellaneous Industries and Occupations" promulgated by the Commission of Labor.  *See* 12 NYCRR § 142-2.4 ("Additional rate for split shift and spread of hours").

and hour claims under New York law. *Cf.* N.Y.Lab. Law § 595 (McKinney 2002) (restricting waiver of rights to unemployment insurance); N.Y. Workers' Comp. Law § 32 (restricting waiver of rights to workers' compensation) . . . ." *Wright,* 2009 U.S. Dist. LEXIS 26492, at *11.

None of Plaintiff's six claims for relief fall into any of those three no-waiver categories: this case is not about unemployment or workers' compensation benefits, and Plaintiff does not claim that Special Touch paid him at a rate lower than the minimum wage rate specified by the Legislature. Indeed, Plaintiff acknowledges that he was "paid an hourly rate ranging from approximately $9.00 per hour and up to $10.00 per hour" (Complaint, ¶ 24).[3]

The *Simel, Wright, DiFilippo*, and *Hummel* decisions applied the holding in *ABC* to the following sections of the New York Labor Law: §§ 190 *et seq.*, 193, and 650 *et seq.*, and 12 NYCRR §§ 142-2.1, -2.2, and -2.4 – *these are the very same sections of the Labor Law upon which Plaintiff bases his claims for allegedly unpaid hours of work, overtime pay, improper wage deductions, and "spread of hours" pay*. Under *ABC* and the above four decisions by judges in this district court, each of those sections of the New York Labor Law *are* subject to being modified or waived by agreement, including by a collective bargaining agreement covering Plaintiff's employment with Special Touch. In addition, it was acknowledged by the plaintiff in *Vera* that Section 193 could be modified or waived by agreement. In these circumstances, the first requirement of the *ABC* case is fully satisfied: the Labor Law sections relied upon by Plaintiff can lawfully be modified or waived by agreement.

---

[3] Those rates paid by Special Touch are higher than the minimum wage rates set by the Legislature in Section 652 of the New York Labor Law. Section 652 specifies that the minimum hourly wage rate was $7.15 when Plaintiff alleges he began his employment with Special Touch in October 2010; $8.00 on and after December 31, 2013; $8.75 on and after December 31, 2014; and $9.00 on and after December 31, 2015. The minimum hourly wage rate has increased to $11.00 for many New York City employers (including Special Touch) as of December 31, 2016. *See* 12 NYCRR § 142-2.1.

**C.    The Collective Bargaining Agreement Between Special Touch
and 1199SEIU Was the Result of Good Faith Negotiations**

The next circumstance present in the *ABC* decision is whether the modification/waiver of the statutory provision had been arrived at as a result of good faith negotiations with respect to a term of employment. *See* 61 N.Y.2d at 249-250.

As stated in the Notice of Removal and the accompanying Declaration of Evan Ostrovsky, the CEO of Special Touch, Special Touch and 1199SEIU, the union representing Plaintiff and its other home health aides, negotiated a special provision in their last three collective bargaining agreements in view of the unique circumstances and demands of the home health industry. The special wage provision negotiated in the 2011 Successor Collective Bargaining Agreement guaranteed home health aides (including Plaintiff) who worked on 24-hour Live-In shift a minimum of 12 hours of pay, *even if* they worked less than 12 hours during that shift.  *See* Ostrovsky Decl. at ¶ 6 [Dkt 1-4] and Ex. C to the Notice of Removal [Dkt 1-3 at p. 57 (Sec. 3.c)].   That special wage provision was re-negotiated by Special Touch and 1199SEIU in the July 1, 2014 Memorandum of Agreement ("July 1, 2014 MOA"), guaranteeing home health aides (including the Plaintiff) a minimum of 13 hours of pay *even if* they worked less than 13 hours during that shift. Ostrovsky Decl. at ¶ 8 [Dkt 1-4] and Ex. C to the Notice of Removal [Dkt 1-3 at p. 62 (Art. II.C)].

As stated in the Ostrovsky Declaration, the special wage provisions in the 2011 and 2014 agreements providing a minimum number of hours of pay to aides working 24-hour Live-In shifts even if they did not work all such hours "were arrived at as a result of good faith negotiations between Special Touch and the Union . . . ." Ostrovsky Decl. at ¶ 7 [Dkt 1-4].  They were negotiated between Special Touch and 1199SEIU because of the unique circumstances and demands of the home health industry where  (a) Live-In aides working a 24-hour shift are rarely

observed by anyone from Special Touch during the 24-hour period, and (b) neither Special

Touch nor the clients (who are seriously ill or infirm) are in a position to determine or confirm

the home health aides' actual hours worked, time available for sleep, time actually slept, periods

of interruptions in their sleep, duration of their meal breaks, and other periods of time where the

home health aides are not engaged in compensable work.  *See* Ostrovsky Decl. at ¶ 6 [Dkt 1-4].

Special Touch and 1199SEIU also negotiated a Memorandum of Agreement effective

January 1, 2016 (the "January 1, 2016 MOA").  That agreement likewise contained special wage

provisions that afforded aides working 24-hour Live-In shifts with a means to have their "pay . . .

adjusted accordingly . . . ."  Ostrovsky Decl. at ¶ 9 [Dkt 1-4] and Ex. C to the Notice of Removal

[Dkt 1-3 at p. 70 (Sec. 2)].

The Ostrovsky Declaration further provides that the special wage provisions "were to the

advantage of both Plaintiff and the other home health aides represented by the Union as well as

Special Touch in a mutual effort between Special Touch and 1199SEIU to negotiate an

alternative arrangement better suited to their respective needs and the needs of the Union's

members." Ostrovsky Decl. at ¶ 7 [Dkt 1-4].  Accordingly, the second of the four circumstances

in *ABC* – that the agreement be negotiated in good faith – is also fully satisfied.

**D.     There Was No Duress or Coercion in the Negotiations**
**Which Resulted in the Special Wage Agreements**

The third circumstance present in the *ABC* decision is whether there was any "duress or

coercion in the negotiations which resulted in th[e] agreement." 61 N.Y.2d at 249.  In view of the

fact that this was a negotiation between Special Touch and a large, sophisticated union, there can

be no dispute that there was no duress or coercion present.   Nonetheless, the Ostrovsky

Declaration provides that the special "wage provisions in the CBA were arrived at . . . without

any duress or coercion."  Ostrovsky Decl. at ¶ 7 [Dkt 1-4].

**E.     The Legislative Purpose Was Not Compromised By the
         Special Wage Agreements Between Special Touch and 1199SEIU**

The fourth and final circumstance present in the *ABC* decision is whether "the legislative purpose [was] in no way compromised by the agreement between the [employer] and its employees." *See* 61 N.Y.2d at 250.

In *Simel,* Judge Daniels addressed that very issue: "The policy goals behind the New York overtime wage law and Section 193 of the New York Labor Law were not frustrated by [plaintiff's] settlement of any wage and hour claims in the Agreement." 2007 U.S. Dist. LEXIS 18693, at *15-16. Similarly, Judge Chin in *Wright* made a similar finding: "Wright's waiver of his NYLL wage claims, moreover, does not raise any public policy concerns or run counter to legislative purpose." 2009 U.S. Dist. LEXIS 26492, at *11. Judge Marrero found likewise, rejecting the plaintiff's argument in *DiFilippo* that his case was somehow different that the circumstances in *Simel*: "The court concludes that despite some differences in the underlying factual circumstances between the instant action and *Simel,* DiFilippo has not sufficiently established that those differences are material enough to preclude the Court from relying on the *Simel* Court's legal conclusions in the instant case." 552 F. Supp. 2d at 427. Judge Marrero reached the same conclusion in *Hummel.* 575 F. Supp. 2d at 570-71.

In these circumstances, the final circumstance in *ABC* is also satisfied. The only remaining question with regard to whether the Plaintiff's New York Labor Law claims are preempted by Section 301 is whether the resolution of any or all such claims requires this Court to analyze and interpret the special wage provisions in any or all of the collective bargaining agreements covering the period of Plaintiff's claims.

**Point III**

**AS IN *VERA*, RESOLUTION OF THE CLAIMS IN THIS CASE
REQUIRES THIS COURT TO ANALYZE AND INTERPRET
THE MODIFICATION/WAIVER PROVISIONS IN
THE COLLECTIVE BARGAINING AGREEMENT**

As noted above, the Second Circuit in *Vera* found Section 301 preemption because the Labor Law Section 193 claim could only be resolved upon an analysis and interpretation of the collective bargaining agreement.  The same is true here.  In *Vera*, the court had to interpret the collective bargaining agreement to determine whether it embodied an agreement between the parties to modify the law regarding commissions. 335 F.3d at 115. Here, the resolution of Plaintiff's claims will require the Court to interpret the collective bargaining agreement to determine whether it embodies an agreement between Special Touch and 1199SEIU to modify any or all of the sections of the New York Labor Law upon which Plaintiff bases his claims for unpaid hours, minimum wage, overtime, improper deductions, and "spread of hours."

Plaintiff asserts in his Complaint that the New York Labor Law sections upon which he relies in support of his claims require him to be paid for all 24 hours of a 24-hour Live-In shift, and not for 13 hours. *See* Complaint at ¶ 26.  Special Touch asserts that the 2011 Successor Collective Bargaining Agreement and the July 1, 2014 MOA between it and 1199SEIU, each providing that home health aides working 24-hour Live-In shifts shall be paid a minimum of 12 or 13 hours, even if an aide works less than 12 or 13 hours, is a lawful modification/waiver permitted by *ABC*, *Vera,* and the four district court decisions discussed above (*Simel, Wright, DiFilippo,* and *Hummel*).  Thus, for this Court to resolve the new York Labor Law claims for relief based on Plaintiff's work on 24-hour Live-In shifts, we respectfully submit that this Court must analyze and interpret the collective bargaining agreement to determine whether the special wage provisions modified or waived any of the sections of the Labor Law on which Plaintiff

relies. *This is the same result reached in Vera, where the Second Circuit held that the resolution of the Labor Law Section 193 claim required the district court to determine if the collective bargaining agreement modified the common law of commissions.*

The 2011 agreement also provides that an aide is limited to 12 hours of pay "unless authorized by the Employer or exceptional circumstances." *See* Ostrovsky Decl. at ¶ 6 [Dkt 1-4] and Ex. C to the Notice of Removal [Dkt 1-3 at p. 57 (Sec. 3.c)]. This Court must also interpret the phrase "exceptional circumstances" to determine if that provision modified the New York Labor Law and, if so, how it impacts Plaintiff's claim that he be paid 24 hours when assigned to a 24-hour Live-In shift.[4]

The January 1, 2016 MOA requires a further and different interpretation in order to resolve Plaintiff's claims that he is entitled under the New York Labor Law to 24 hours pay when assigned to a 24-hour Live-In shift. That labor agreement contains a special wage provision that afforded aides working 24-hour Live-In shifts with a means to have their "pay . . . adjusted accordingly" if they report to Special Touch within 48 hours after the end of a 24-hour Live-In shift that they were (a) unable to receive five hours of uninterrupted sleep-time, (b) interrupted by a call to duty at any time during the aide's total of eight hours sleep time, (c) unable to receive three hours duty-free time for meals or break periods, or (d) interrupted by a call to duty at any time during the aide's three hours of meal or break time. *See* Ostrovsky Decl. at ¶ 9 [Dkt 1-4] and Ex. C to the Notice of Removal [Dkt 1-3 at p. 70 (Sec. 2)]. This Court must interpret those provisions of the January 1, 2016 MOA to determine if they modify any

---

[4] Of course, all of these determinations will ultimately be referred to an Arbitrator designated under the January 1, 2016 MOA if this Court finds 301 jurisdiction and then were to grant Special Touch's pending motion to compel arbitration of Plaintiff's claims.

provisions of the New York Labor Law on which Plaintiff bases his claims and, if so, how those provisions impact Plaintiff's 24-hour pay claims.

Point IV of Plaintiff's Brief argues that Special Touch's arguments were entirely rejected in *Chu v. Chinese American Planning Council Home Attendant Program, Inc.,* 194 F. Supp. 3d 221 (S.D.N.Y. 2016).  However, the defendant in *Chu* did not assert in its Notice of Removal or its opposition to the motion to remand that it had negotiated any special wage provisions with the union due to the exigencies and demands of the home health care industry.  Nor did the defendant in *Chu* argue that any of the provisions it negotiated with the union modified or waived any provision of New York Labor Law within the meaning of the *ABC* case. In addition, the defendant in *Chu* did not raise the argument we address in Point IV, below: that Plaintiff has himself placed the collective bargaining agreement in issue by virtue of Plaintiff's claims that expressly rely on New York Public Health Law § 3614-c and New York City Administrative Code § 6-109, both of which reference governing collective bargaining agreements.

**Point IV**

**PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION DIRECTLY PLEAD VIOLATIONS OF A COLLECTIVE BARGAINING AGREEMENT**

Plaintiffs seeking to avoid federal court jurisdiction oftentimes take care to avoid placing anything in a complaint that raises a federal question.  As the Second Circuit stated in *Vera*, the "well-pleaded complaint rule" is not applicable where a defendant asserts jurisdiction based on Section 301 preemption.  335 F.3d at 113-14.  The "complete preemption corollary" to the well-pleaded complaint rule extends federal court jurisdiction "even when the plaintiff's claim makes no reference to federal law and appears to plead an adequate state claim." *Id.* (citations omitted).

Plaintiff's Complaint and in particular Plaintiff's Fifth and Sixth Causes of Action, while characterized as breach of contract claims, specifically refer to a state statute (New York Public

Health Law § 3614-c) and a municipal ordinance (N.Y.C. Administrative Code § 6-109) both of which make reference to and incorporate the collective bargaining agreement between Special Touch and 1199SEIU.  *See* Complaint ¶¶ 2, 40-42, 45-51, 86-91, 96.  As Plaintiff states in paragraph 2 of his Complaint, he seeks "to recover wages *and benefits* which [he claims he is] statutorily and contractually entitled to receive pursuant to the New York Labor Law, . . . New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") . . . . , New York Public Health Law § 3614-c, and Title 6, Section 6-109 of the New York City Administrative Code . . . ." (Emphasis added.)  Plaintiff's claims under the New York Labor Law and the NYCRR are *solely* for wages and not for benefits, whereas the claims under the New York Public Health Law § 3614-c and Section 6-109 of the New York City Administrative Code seek allegedly unpaid wages *and benefits*.  *See* Complaint ¶¶ 42, 44, 48, 50, 51, 53, 89, 94. The term "benefits" is a key part of the Section 3614-c and Section 6-109 references to collective bargaining agreements.

Section 4 of the New York Public Health Law § 3614-c provides as follows:

Any portion of the minimum rate of home care aide total compensation attributable to health benefit costs or payments in lieu of health benefits, and paid time off, as established pursuant to subdivision three of this section shall be *superseded by the terms of any employer bona fide collective bargaining agreement* in effect as of January first, two thousand eleven, or a successor to such agreement, which provides for home care aides' health benefits through payments to jointly administered labor-management funds.

(Emphasis added.)[5]   Similarly, Section 6-109 of the New York City Administrative Code contains a section entitled "Home Care Services," which provides:

'Homecare Services' means the provision of homecare services under the city's Medicaid Personal Care/Home Attendant or Housekeeping Programs, including but not limited to the In-Home Services for the Elderly Programs administered by

---

[5] This section of the statute was in effect until June 2016, at which time it was deleted in an amendment to the law.

the Department for the Aging. For homecare services provided under the Personal Care Services program, *the wage and supplemental benefit rate* above shall apply only as long as the state and federal government maintain their combined aggregate proportionate share of funding and approved rates for homecare services in effect as of the date of the enactment of this section. For contractors or subcontractors providing homecare services, *the supplemental benefit rate may be waived by the terms of a bona fide collective bargaining agreement* with respect to employees who have never worked a minimum of eighty (80) hours per month for two consecutive months for that covered employer, but such provision may not be waived for any employee once a minimum of eighty (80) hours for two consecutive months has been achieved.

(Emphasis added.)

By incorporating into his breach of contract claims both a state statute and city ordinance that refer to and incorporate Special Touch's collective bargaining agreement , Plaintiff has invoked Section 301 jurisdiction under the  "complete preemption corollary" to the well-pleaded complaint rule.   In order to resolve the Fifth and Sixth Causes of Action, this Court must interpret the terms of the collective bargaining agreement that Plaintiff incorporated into those two causes of action. Thus, this Court has Section 301 jurisdiction over the Fifth and Sixth Causes of Action.[6]

---

[6] Special Touch also raised as a ground for 301 preemption that Plaintiff has failed to utilize or exhaust the grievance and mediation/arbitration procedures and remedies in the collective bargaining agreement. There are an abundance of cases addressing this issue, and it remains an area where the "elusive" nature of Section 301 preemption has led district courts to issue conflicting opinions as to whether this is a valid basis for federal court jurisdiction. Inasmuch as the arguments set forth in Points III and IV provide ample basis for Section 301 jurisdiction in our view, it is unnecessary for Special Touch to brief this additional ground for federal court jurisdiction.

## CONCLUSION

For all the foregoing reasons, Special Touch respectfully requests that this Court deny Plaintiff's Motion to Remand this case to the state court, and hear Special Touch's motion to dismiss or to compel arbitration, which was placed in abeyance.

Dated:  April 7, 2017

Respectfully submitted,

*Richard JR*

Richard J. Reibstein
Janet B. Barsky
PEPPER HAMILTON LLP
620 Eighth Avenue, 37th Floor
New York, New York 10018
Tel. 212.808.2700
Attorneys for Defendant